IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DITRIKH LIPATS and DANIEL LIPATS, )
)
              Plaintiffs, )
) Case No. 13-CV-407-JED-FHM
v. )
)
ALLSTATE INSURANCE COMPANY )
and ALLSTATE FIRE & CASUALTY )
INSURANCE CO., )
)
              Defendants. )

**OPINION AND ORDER**

Plaintiffs have asserted claims for breach of contract and bad faith tort against both defendants. Following the filing of summary judgment motions by the defendants, the plaintiffs have conceded the breach of contract claims, and accordingly the defendants' motions for summary judgment will be granted with respect to the breach of contract claims. This order will accordingly discuss only the plaintiffs' bad faith tort claims.

The following facts are supported by evidence in the record and are construed in favor of the plaintiffs for purposes of determination of the summary judgment motions. On May 12, 2011, a third party, Barbara McKnight, backed her car into plaintiff Daniel Lipats' vehicle, causing damage. The Lipats vehicle was insured under an automobile insurance policy issued by defendant Allstate Fire & Casualty Insurance Co., while McKnight was covered under an automobile policy issued by Allstate Insurance Company. Plaintiffs' coverage carried a $1000.00 deductible.

Plaintiff reported the accident to Allstate.[1] From the outset, Mr. Lipats informed Allstate that he did not want to file a claim against his own policy, but wanted Ms. McKnight's insurer to pay for his property damages. Allstate noted receipt of the police report on May 18, 2011 and would have known from the police report that McKnight was also insured by an Allstate entity. The police report indicated the officer's observations that McKnight backed her vehicle into the Lipats automobile on the driver's side front side panel and that McKnight did not stop to investigate. The police officer determined that there was no improper action by Mr. Lipats and that Ms. McKnight had improperly backed into the Lipats vehicle.

After Allstate received the police report, Mashonda Wilson, who was employed by Allstate Insurance Company, was assigned and communicated with Mr. Lipats. Ms. Wilson testified that she handles first party claims, that she was the first party adjuster for the Lipats, and that Mr. Lipats was her insured. Wilson further testified that she was responsible for advocating that McKnight's coverage pay for Mr. Lipats' property damages, while Allstate agent Tom Williams was handling the claim on behalf of McKnight's third party coverage. Wilson and Williams had a "roundtable" meeting with their shared supervisor, Mark Green, at Green's desk, and the decision was made to deny the Lipats claim against McKnight's policy.

Plaintiffs also point to notes by Ms. Wilson in the claim file indicating that Mark Green was the supervisor for both Williams and Wilson:

> Returned the insd's call and told him that *myself and Tom Williams spoke with our supervisor Mark Green* and he said that based on the damages, the p/r, the fact that the clmt is denying liab, and no visible damages to the clmt's vehicle we do not have any conclusive evidence in order to pay my insd's claim. The insd said that the clmt was cited. I looked at p/r and verified that the clmt was cited.

---

[1] Both Allstate entities share the same physical location and telephone number. The claims personnel acting on behalf of Mr. Lipats and Ms. McKnight were also located in the same general physical location. Accordingly, where it is unclear which specific Allstate entity is involved in a particular action, the Court will refer generally to "Allstate."

> Spoke with FPL mark green and he said a citation for a hit and run is a criminal act and that the clmt should have waited until the police got there to investigate. He said that it does not constitute liab.

(Doc. 59-4 at 3) (abbreviations and grammar as in original).[2]

After Allstate denied liability on McKnight's policy, plaintiffs' only recourse was to recover under their own collision insurance coverage, which required that they pay the first $1000.00 of their own property damages pursuant to their contractual deductible. Initially, Allstate paid nothing on the collision claim, because the repair estimate for damages was lower than the $1000.00 deductible. After the filing of the lawsuit, however, plaintiffs provided an estimate for $1417.86, and Allstate issued a check in the amount of $417.86, which represented the amount of the repair estimate less the plaintiffs' $1000.00 deductible.

Citing evidence that Mark Green was the supervisor of both Wilson and Williams, plaintiffs assert that the defendant Allstate entities engaged in a scheme to defraud plaintiffs by colluding to avoid payment although McKnight's liability was clearly established. According to plaintiffs, had Allstate made a good faith determination of liability, McKnight's insurance would have been responsible for all of the repair costs to plaintiffs' vehicle, and the plaintiffs would have paid nothing. Instead, plaintiffs had to pay their $1000.00 deductible.

Both of the Allstate entities have moved for summary judgment. Allstate Insurance Company asserts that it cannot be held liable because it only acted as the third party insurer and thus owed no duty to plaintiffs under Oklahoma law to settle the third party claim in good faith. Allstate Fire & Casualty argues that it is entitled to summary judgment because its only duty was to pay on plaintiffs' first party collision claim and it paid on that claim, subject to the plaintiffs' deductible, in accordance with the policy of insurance, and accordingly could not have acted in

---

[2] Although the claims file notes refer to Ms. McKnight as the "claimant," she was not asserting any claim against Mr. Lipats.

bad faith. The defendants' legal arguments for summary judgment are generally consistent with Oklahoma law. An insurer generally does not owe any duty to a third party who is a stranger to the insurance contract. *See McWhirter v. Fire Ins. Exch.*, 878 P.2d 1056, 1059 (Okla. 1994); *Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364 (Okla. 1984). Applying this principle without any further analysis would result in summary judgment in favor of defendant Allstate Insurance Company, which provided insurance to McKnight and thus would not ordinarily owe any duty to the plaintiffs.

Allstate Fire & Casualty also arguably acted in accordance with its insurance contract with plaintiffs because it applied a deductible that was contractually required. Under Oklahoma law, an insurer has an implied-in-law duty to act in good faith and deal fairly with its insured to ensure that the policy benefits are received, and an action in tort arises only where that duty is breached. *See generally Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005); *Christian v. American Home Assur. Co.*, 577 P.2d 899, 901-05 (Okla. 1978). However, plaintiffs contend that the Allstate entities are merely instrumentalities of one another and that the entities utilized the same physical location, contact number, and personnel, with a shared supervisor / decision maker to avoid paying plaintiffs for damages that were caused by another Allstate insured. While the defendants generally deny that they are instrumentalities of one another and deny that the same supervisor was involved on both the first and third party sides of the claims process, there is evidence in this record – when construed in plaintiffs' favor as is required at this stage of the litigation – that supports the plaintiffs' position.

"An insurer may not treat its own insured in the manner in which an insurer may treat third-party claimants to whom no duty of good faith and fair dealing is owed." *Badillo*, 121 P.3d at 1093. Here, plaintiffs allege that there was essentially a commingling of claims-handling

functions and that Allstate did not act in good faith as to a legitimate claim by one of its insureds against another of its insured's policy coverage, in a manner that required the plaintiffs to file a claim on their own policy and thus pay a deductible before *anything* would be paid by Allstate. Wilson, although allegedly an employee for McKnight's insurer, considered plaintiffs to be her insureds on whose behalf she was allegedly advocating, yet she was the subordinate of a manager, Green, who was not acting in the interests of the plaintiffs. According to plaintiffs, this conflict and lack of separation between the companies supports a claim for bad faith where the Allstate employees collaborated in denying plaintiffs' valid claim, while they knew that the denial would require the plaintiffs to pay a deductible and to file a claim against their own Allstate policy.

With respect to whether corporations may be considered to be instrumentalities or alter egos of one another, another Judge in this District has summarized Oklahoma law as follows:

> Oklahoma law states, "One corporation may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate a fraud *or* (2) one corporation is merely an instrumentality or agent of the other." *Gilbert v. Sec. Fin. Corp. of Okla.,* 152 P.3d 165, 175, 2006 OK 58, ¶¶ 22–23 (citing *Gibson Prod. Co., Inc. of Tulsa v. Murphy,* 100 P.2d 453, 458, 1940 OK 100, ¶ 36) (emphasis supplied). . . .  As seen *supra,* Oklahoma law is stated in the disjunctive, requiring *either* a showing [of] fraud or that one corporation is merely the instrumentality of another.

*Canal Ins. Co. v. Montello, Inc.*, 822 F. Supp. 2d 1177, 1181-82 (N.D. Okla. 2011).

In *Short v. USAA*, 10-CV-766-TCK-FHM, 2012 WL 208091, *5 (N.D. Okla. Jan. 24, 2012), which involved allegations that insurance companies were instrumentalities of one another, another judge in this District further noted that issues involving alter ego liability are generally for a jury:

> "If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law." *Oliver v. Farmers Ins. Grp. of Cos.,* 941 P.2d 985, 987 (Okla. 1997).

5

>This legal principle applies to the tort of insurance bad faith. *See id.* (holding that general test for imposing alter ego liability set forth in *Frazier v. Bryan Mem'l Hosp. Auth.,* 775 P.2d 281, 288 (Okla.1989), applies to tort of bad faith). Where a non-party to an insurance contract is "related to and involved in the same insurance group" as the contracting party, the question of alter ego liability is generally one for the trier of fact. *Id.*

*Id.* at *5 (concluding dismissal would be inappropriate on plaintiffs' instrumentality allegations).

Based upon the evidence, construed as it must be in favor of the plaintiffs in considering summary judgment, the Court finds and concludes that there remain issues of fact with respect to whether the defendants acted separately, or whether they acted as one, in denying plaintiffs' claim against McKnight's policy, which in turn delayed and reduced payment to the plaintiffs on their own claim against their Allstate policy.

IT IS THEREFORE ORDERED that the defendants' summary judgment motions (Doc. 15 and 23) are **granted** on plaintiffs' breach of contract claims and **denied** as to plaintiffs' bad faith claims.

SO ORDERED this 31st day of March, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE